Good afternoon. We're pleased to have Judge Kermit Lopez from the First Circuit Court of Appeals with us by video. Judge Lopez, thank you for agreeing to continue to be on the panel on this case and be with us by video. Thank you. Good afternoon. All right. We'll call our case, Heather Hinderberger v. Iroquios School District. Good afternoon. May it please the Court, my name is Richard Lanzillo. I represent the appellant, Sally Loftus, in this matter. I would respectfully request two minutes for rebuttal.  Thank you, Your Honor. I would also like to thank the Court and counsel for accommodating the rescheduling of this due to my prior health issue. My argument today really focuses on three points concerning which we believe the District Court erred, and that error warrants a reversal of the denial of qualified immunity. The first error committed by the District Court, and I think the most fundamental one, relates to its application of the deliberate indifference element of the state-created danger theory of liability as applied to the facts identified by the District Court itself. The second point... Is that sure, when you get into deliberate indifference, the District Court seemed to make it clear that it viewed that as raising factual issues. I know you've couched and said, no, no, no, we accept what the District Court says, but what the District Court says is what the mens rea there was is something to argue to the jury. Why is the District Court wrong in understanding the negligence versus deliberate indifference issue to be one of fact for a jury? Your Honor, it's an objective standard based upon, again, the facts, which I must accept as identified by the District Court, but it is an objective standard rather than... Sure, but objective standards are fact-based all the time. And so, whether objectively speaking, you would look at this and say it falls on the negligence side of the line or it falls on the deliberate indifference side of the line, isn't that a question of fact? I don't believe so, Your Honor. I mean, otherwise, the decisions of this Court, which have repeatedly resolved this issue as a matter of law and identified it as a matter of law, I would not be able to reconcile those cases. And by way of example, the Betts versus Newcastle case, the one where we had the actually youth adolescent detainees, and I emphasize the detainee part because, as we know under the case law, once incarcerated, the State's duty is increased markedly to protect. And in that case, we have facts which are directly analogous and which the District Court and this Court held as a matter of law that the deliberate indifference standard was not satisfied. Is the duty there different because you're in a 14th? I mean, you're in an Eighth Amendment versus a 14th Amendment context? It is not, Your Honor. In fact, we know that because in the Sacramento, County of Sacramento versus Lewis case, which is the seminal case in this area, was, in fact, an Eighth Amendment case and is the case upon which this Court and other courts have built the standard of deliberate indifference. But by virtue of your saying facts are analogous, the point is there is a body of facts in each case. Correct. And the determination of deliberate indifference will rise and fall based on that fact. So, you know, you can't say something is analogous and therefore controlling. You look at all the facts. Here there are a number of facts that make it a question mark. Was this negligent? Was this deliberate indifference? And that's where the jury's role comes in, does it not? I don't believe in this case, Your Honor. It is not a determination for the jury. We know because the district court told us. Well, how is it categorically then not deliberate indifference? We know. As a matter of law. As a matter of law, because as the district court found, Sally Loftus took several steps to protect the safety of Heather Hinterberger and the other cheerleaders under her supervision. There were no mats used. Yes, Your Honor. During this stunt. Yes. Is that correct? That is correct, Your Honor. And there was no rule requiring mats. And, in fact, we know because, as the district court noted, mats are, the efficacy of mats is in question. What's important, Your Honor, and the reason we know there's not deliberate indifference here is because Sally Loftus surrounded this stunt team with spotters whose sole responsibility was to prevent the very type of injury that occurred. We know that she made the team wait seven months before attempting to add this to their routine. We know that before she did that, she brought in an experienced flyer to come in and assist the team. Wait one second. We're having a problem with an incoming call. Can we figure out how to do something around it? Maybe. Okay. Okay. Maybe it's gone. We appear to have given up, Your Honor. Judge Lopez, did you have a question? No, thank you. The call is not from here. Okay.    Your train of thought. You were talking about this. No. No. No. No. No. No. You were talking about the steps that she took? Yes, Your Honor. We knew that she took several steps, several accepted steps. And in addition to that, we know that there was no rule of the body which regulates athletics in Pennsylvania is the PIAA. Neither they nor any private organization required mats for the twist-down cradle. So the absence of a rule requiring something means, a fortiori, that it cannot be deliberate indifference to not do something? It means that there was no guidance, meaningful guidance for the coach. Well, but she had her own guidance. She wanted mats. She insisted because common sense says when you're doing this type of exercise, you don't want to do it on a concrete floor. So do you need a rule to tell you that mats are a good idea? She apparently didn't. The fact she should not be penalized or her conduct cannot be considered objectively unreasonable because she requested additional safety measures beyond the ones that she indisputably took, Your Honor. That's the point. And the whole touchstone, as I understand it, of qualified immunity, is that the State actor must be on notice through the case law that his or her actions are clearly illegal. All right. So there you're getting to a different issue. You're getting to a different issue beyond deliberate indifference. Right, right, right. And, indeed, that seems to be the stronger of your issues. So why don't you go to that? Thank you, Your Honor. Yes, indeed. As of March 3, 2004, and, indeed, as of today, neither this Court and certainly not the Supreme Court nor any other Court of Appeals has applied the state-created danger theory to a situation involving a public school athletic injury. The district court said, well, you know, it's been applied in this context, the state-created danger theory. It's been applied in cases involving teachers who have molested their students. That is not the case. Well, but how about the wrestling case? How about the wrestling cases? This is pretty much, if you want to say analogous, similar to that. Well, the Scioto case, the district court case, first we know because this Court has told us that a single district court case cannot create clearly established law. But putting that aside for the moment, assuming that it is correctly reasoned, in that case we had two very different things going on here. We had the coach invite a collegiate level wrestler who was roughly 36% heavier in weight, 40 pounds heavier in weight, was six years older than the young youthful wrestler, come in and live wrestle the plaintiff there. Again, is that your best pitch? Because I expect your counsel will get up here and say, here we have a coach telling a freshman girl, let these people hurl you 15 feet into the air over a concrete floor with no matting. And, you know, isn't that just on its face something that you would think people would know you just can't do? Your Honor, if that's the case, then if that's conscious chalking, then how is it and it cannot be. It is something that goes on all the time in 2004 and continuing to today in front of hundreds of parents and other spectators. Judge McLaughlin said in response to that argument made before him that when young athletes are doing that on a hardwood floor, a basketball court or something like that, it is presumably because they have mastered the sport, not because they are starting it for the very first time that day. But let's leave that aside for a moment because I think we've slipped back into deliberate indifference versus negligence. And I would like you to stay on the point you were starting on, which is, is this clearly established?  And here's one way I've asked the question. Tell me whether I'm thinking about this correctly or not. And I'll ask counsel for Ms. Hinterberger this as well. Is the question whether it can be said to be beyond dispute that a stunting without mats was deliberately indifferent? Is that a fair way to put it or an unfair way to put it? Better I should say, is that the legally correct question or not? I believe it is, Your Honor. I mean, is it per se deliberately indifferent to stunt without mats? I think that's a fair question. And I believe we've – Well, not in the context of this case, though, Your Honor, because the issue is, I think the better way to state it, is it deliberately indifferent to employ a variety of safety measures, including spotters surrounding the stunt team, including an experienced trainer, including waiting and then not have mats because of their unavailability, and yet to proceed. I think that's, for this case, the best way to articulate the standard. With respect to clearly established, though, I should mention that it's unusual in this case. Typically I would not cite district court cases to this court. But they're helpful here because they illustrate the fact that the district courts are really all over the map here, although they are definitely predominantly running in favor of not recognizing this theory in this context. They appear to recoil from that. Are you saying they're all over the map on the deliberate indifference or the clearly established aspect? Both, Your Honor. Well, they don't get to clearly established because they reject the theory, the first prong of saucier. They never get to the second. But the point here is that to impose liability on Sally Loftus in this situation, it asks for a degree of legal scholarship and clairvoyance that district court judges and lawyers struggle with. I mean, I try to find some controlling principles, some coherence in this law, and it's very difficult. And particularly given the fact that, you know, there's one district court case, SIOTA, which you can try to find an analogy to, which I think is very different. To say that that somehow puts Sally Loftus on notice that failing to use MATS, doing all the other things she did but failing to use MATS, somehow she should have been on notice that that was clearly illegal, I think it denies reality. I think you're right. You can say that about the whole line of cases, I mean, starting with Knight. Would that officer, you know, have known clearly established? And it's almost as though we put the kind of the deliberate indifference or shock of the conscience, once we find that, we say, well, as Judge Jordan said, it's beyond dispute for no one in their right mind, and, therefore, it's clearly established. And I agree with you that it's a tough leap, but we take those leaps. I see I'm running out of time, and I don't mean to interrupt you. I mean, Knight recognized state-created danger, but I don't recall, but I'm not sure that it dealt with the clearly established. I don't think it could have because it was the first time the court recognized it. And if this court were to find that there was a constitutional violation here, so be it. We will have guidance going forward. State officials, part-time parent coaches like Sally Loftus will have guidance going forward. But it is fundamentally unfair to use this case as to adopt that standard and then retroactively apply it to her conduct in 2004.  Thank you. Counsel, could you start kind of where we left off? Good afternoon, first of all. Sorry. Attorney Tom Myers on behalf of the appellee, Heather Hinterberger. Thank you. Thank you. Is it your thought that if we or a jury were to find deliberate indifference, that that suddenly makes it clearly established? And if not, what makes this set of facts to what transforms it into something that is clearly established law? I'm not sure I understood the first part of the court's question, but as to whether or not this, the state-created danger doctrine, was clearly established in this context. Clearly, this court's decision in Doe v. Dealey says that district court decisions are properly considered and do inform the legal landscape. The Scioto case wasn't so. Well, it might inform, but clearly establish is pretty strong. It's very strong. It is. Just two weeks ago, the Supreme Court in a procuring opinion stand quoted Al Kidd and made the point that it may not require a case directly on point, but the precedent, quote, must have placed the statutory or constitutional question beyond debate, unquote. That's from Al Kidd reemphasized again in this opinion just two weeks ago. It has to have put the question beyond debate. Can you really, Mr. Myers, tell us on the basis of Scioto that the question is beyond debate? Your Honor, again, because it's a district court decision, it can't alone represent clearly established law, and I'm not going to suggest to the court that it can, but there were a number of cases within the Third Circuit in the school setting context. In 92, there was D.R. v. Middlebucks. In 93, there was Hunter v. Carbondale. These were school setting cases that played the framework, essentially, for state-created danger liability. D.R., isn't that a molestation case? I understand they're different in terms of the factual context. They're really different. I mean, there's a level of particularity and generalization that we have to be on guard about, right? I mean, we're told by the Supreme Court that when you're talking about clearly established law, you've got to pay attention to the level of generality because at a certain level, if you go up high enough, you can say, well, yeah, that was in the law for a long time. So let's, for purposes of discussion, accept that molesting children is not the same as high school athletic issues generally and stick to what we're talking about here. Is it fair to put the question, as I put it to Mr. Anzillo, that the legal issue is whether it could be said to be beyond debate that stunting without mats is deliberately indifferent behavior? To the extent that it represented deliberately indifferent state action, I think the answer is yes. Well, then you're answering my first question, which was once you say deliberate indifference, does that then transform it into clearly established? My point in saying it like that is because I'm differentiating from the D.R. and Hunter cases where there was student-on-student injury versus this case and the next case, where it was state actor caused harm. I don't want you to go too far. I'll have you go back there, Mr. Myers. But I do want you to answer my question, which is, is that the right question? I mean, you've answered the question and said, yes, it is. You've said, yes, it is the case that that would be deliberately indifferent, and that's bad. But my question is, is that even the right question to start with? Is the way I framed it the correct legal question? Is it beyond dispute that stunting without mats is deliberately indifferent? Is that even the right way to frame the question? Well, now you've just asked two questions, Your Honor. Objection. The answer to the first question is, I believe it is. Mr. Brazier, plaintiff's safety expert, testified that he doubts you would be able to find any competent coach in the country who would do such a thing. Qualified immunity does not protect the plainly incompetent or those who knowingly violate the law. At the very least, Loftus, there's abundant evidence that she was plainly incompetent for doing such a shocking thing that any reasonable high school cheerleading coach would recognize as shocking because of the severe risk of serious injury that she exposed Hinterberger to by doing so. I think you might have put the rabbit in the hat when you said contrary to law there, right? I'm sorry? Because that's what we're trying to wrestle with, is whether this is so plainly obvious that it's just loopy. And shouldn't there be a case? You say, well, look at this case law. Clearly this case law says this is not allowed. So what is that case law that says clearly this is not, this is deliberate and different? Well, again, I would have to go back to the state-created danger analysis itself as established and formally adopted by Knight, where... So once you have state-created danger, there is no qualified immunity defense. I mean, that's basically what you're saying. You're saying if we find all the elements of state-created danger to be fulfilled, then automatically you've got it clearly established. No, there's certainly, as the case law reflects, the objective reasonableness inquiry. I mean, even if the law is clearly established, if the defendant can demonstrate that her actions were objectively reasonable, qualified immunity still applies. Here we would argue that... On that point, do you accept what the district court seems to say, which this court seems to accept, which is this was a genuinely freak accident? The testimony was, you know, the experienced coach who was there said she'd never seen anything like it. Other students said she, Ms. Hintenberger, flew over in a way that was kind of bizarre. Was it... Do you accept what appears to be a factual statement by the district court that this was truly a freak accident? The court says that the testimony would certainly allow for that... Not the testimony, yeah. The testimony would certainly allow for that conclusion. But nonetheless, Loftus's conduct, with knowledge of the risk of serious injury with stunting in general, that this was a more dangerous and risky stunt that she was introducing to the squad, and the benefit of safety netting in reducing the risk of serious injury. What if she had a circle of spotters that went out 10 feet instead of 4 or 5? Again, this goes back to what the court already noted, is that it's really a factual issue for resolution by the jury. Hermann's ray here. Spotters are notoriously ineffective in catching unanticipated falls. The safety manual that we've placed into evidence specifically warns against this very type of activity, where you are introducing a more difficult stunt and it's beyond the current level of your spotters, beyond the level of your flyer. But your opposing counsel puts into the record a whole lot of information from athletic associations too. You know, the fact that Maddy wasn't called for until recently, and that when you were doing a double twist. These indicate that there are some conflicting views about this, do they not? They absolutely do not. This is a key point that Loftus continues to ignore because she has no answer for it, and that's that this stunt occurred during the learning of a new stunt. These new standards that were adopted years later after this injury occurred that refer to the double twist down, refer to mastered stunts, not new stunts. Of course, mastered stunts are done without matting in public venues like basketball games and things like that. But that wasn't the case here. Loftus knew better. She gambled with Ms. Hindenburg's safety. Well, that's an interesting way to put it because is not cheerleading inherently got risk with it? I mean, when you have any kind of athletic activity that involves flying, whether it's gymnastics or cheerleading, isn't it something in which there is going to be risk? Is what you're arguing for when you say she gambled with Ms. Hindenburg, doesn't every student and every coach who accepts accept a level of risk associated with this kind of activity? And the question is, what's an acceptable level of risk? Yes, to your initial question, there absolutely is risk with any type of athletic activity, cheerleading, stunting included, but not this particular risk. This is what differentiates. One of the things that differentiates this case from this court's Betts decision. In Betts, violent impact, physical and often violent impact, is something that's integral. I mean, it's expected on every play, and yet serious injury is so infrequent that that risk isn't substantial or objectively intolerable by societal standards. This is much different, this case. If violent impact with a concrete floor was expected on every stunt, this activity would not exist because of the risk of severe injury. Do we know if she fell at a place that normally would have been matted? Or was this out, she flipped way out? Do we know that? That's going to be another factual issue. I can't honestly say that that question, that we've identified the answer to that. Well, but that seems pretty important, because the mats seem to be the be-all and the end-all here. If the mats would normally, as a matter of course, been in a location and she flipped beyond that location, that would seem to have some bearing. We would certainly present testimony at trial that the matting would have been of a sufficient dimension to have prevented this fall. I believe that's what our experts believe. The other thing about Betts is tackle football is played on grass, not a hard surface. Yeah, well, if two teenagers' heads come together at full force, the grass you fall down on doesn't really make a difference. So I'm not sure Betts is all that helpful to you. But we're spending time in the foreseeability realm, and maybe that's to some extent unavoidable. But I'm coming back to the question of clearly established law, because your argument seems to be that stunting without mats is ipso facto, on its face, deliberately indifferent, and because it's deliberately indifferent, it was something that you'd have to say was part of a state-created danger and beyond the reach of qualified immunity. Everything seems to flow from the assertion that it's just so obvious you can't do this with mats. Am I fairly characterizing the argument? When the stunt is a new and unmastered stunt and it's conducted over a hard and unforgiving surface at such a height and involves a mid-air acrobatic maneuver like this one did, yes. But it's beyond dispute that there was a constitutional right, beyond dispute that there's a constitutional right not to learn a stunt in a high school cheerleading squad without a mat. Because that's the question you have to say yes to, right? Yes, and this activity was entirely optional. This wasn't something that Loftus had to do. She opted to do this. Well, it's all optional, right? I mean, if you want a no-risk cheerleading squad, you could have them come out on their knees on roller boards so they're not more than two inches above the ground, go whoo-hoo and scoot back off the floor. As long as you're doing cheerleading, it's all voluntary and there's going to be some risk, isn't there? True, but I don't think that children and their parents need to check their constitutional rights at the door in order to participate in a public school athletic program. Well, that's, again, you're putting the rabbit in the hat by saying check your constitutional rights. That's the question we're trying to answer. Is there a constitutional right and was it clearly established? And if I'm understanding you right, it all comes down to without mats, is by that very fact a constitutional violation and it was clearly established? I think that's right. When you look at NIPE and the SIOTO, rather extensive qualified immunity analysis that Loftus had fair warning. Oh, but did NIPE get into qualified immunity? No, but when you look at NIPE, it was a state actor caused harm. It wasn't student on student. Right, but then that NIPE on state created danger, yes, okay. But you can't use NIPE as going to clearly establish. I understand that. You can only go to SIOTO. The district court decisions after NIPE that were prior to Loftus' conduct all had no trouble following NIPE's analysis. We had Maxwell, we had Sussevich, and SIOTO. They all were able to follow NIPE's analysis and applied the willful disregard, as it was initially known, or deliberate indifference culpability standard because the circumstances provided for unhurried judgment. There was also another case that the court didn't mention, and that was the Page v. School of Philadelphia 1999 Eastern District Court decision. So there were at least four cases prior to this conduct that involved school-setting injuries where the NIPE state created danger analysis was followed without any confusion. Two months after this injury occurred, I see that I'm out of time. I'm sorry. You can finish that thought, please. Two months after this injury occurred, there was another district court decision in Hillard v. Lampeter-Strasburg School District which followed SIOTO. It state created danger and qualified immunity analysis under facts really quite similar here where there was a serious injury suffered as a result of a fall where there was no safety mat in use. Thank you very much. Thank you very much. Mr. Lenzon, you're reserved two minutes. Regarding the clearly established principle, I do not believe it can be that these cases that we're talking about now can be reconciled with vets. And I want to pick up on a point that my Leonard co-counsel referenced as far as the anticipated impact between football players. That case is more on point than I think I really emphasize. That is also a lack of equipment case, a failure to employ all available safety equipment. Sure, the inherent risk of football is a high-speed impact. But what happened in that case was they played this game without helmets. And I respectfully submit that is far more culpable than anything that Sally Loftus has been accused of. And as I try to discern some coherent standard among these cases, I look at the Yatsko case from the Middle District of Pennsylvania and the Alt case. The Middle District case is a situation where you have a coach who is observing a young woman basketball player, high school basketball player, who's showing clear signs of having sustained a concussion. He sends her back into the game, which aggravates her condition and she ends up with severe injuries. The court in that case twice ruled, as a matter of law at the pleading stage, no state-created danger. Well, wasn't that the one where she said, if you don't feel well, come out? Perhaps. And I think that's analogous to the undisputed fact that Sally Loftus has always won the record. If you're not feeling well, if you don't feel up to it, don't participate. Well, let me ask a practical question, okay? And the theoretical discussion we've been having here shouldn't take away from, in any way, the sense of sorrow that anybody's going to feel about a young person sustaining an injury, especially a serious injury as the one that occurred here. How will school districts know that they'd better find money in their budget for matting instead of turning coaches down if they're not, through liability imposed on a coach, if nothing else, put on notice that you can't just say, hey, learn this stunt over a concrete floor. Good luck. How are they supposed to get a message about safety if we don't allow a lawsuit like this to move forward? Your Honor, the Supreme Court has answered that in Saucere. You have discretion, and also Pearson v. Callahan. You may, if you choose, of course, find a constitutional violation here. But Sally Loftus cannot be sacrificed on the public policy of encouraging greater attention to safety by school districts, and that's what the second prong of the Saucere analysis is all about. So if indeed a message must be sent, it can be sent, while at the same time not detracting from Ms. Loftus' entitlement to qualified immunity. And I would note one, if I may just finish one quick thought related to the Yatsko case. I did note that the Alt case out of the Western District of Pennsylvania found a way to distinguish Yatsko by saying that there was a compulsion, there was an allegation that the coach pressured or forced the student to reenter the game after having sustained the injury, and that was distinguishing, and that was more of an affirmative act. As I say in my brief, I have no idea whether any of these analyses are appealing to the court or correct. I won't know what the correct analysis is until this Court speaks, but that's precisely why qualified immunity is appropriate here. Thank you very much, Your Honor. All right. Judge Lopez, did you have any lingering questions? No, I'm fine. Thank you very much. Thank you very much. Thank you. We'll recess court, and we'd like to clear the courtroom, and we'll confer with Judge Lopez on the line now. Thank you very much. Thank you.